## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Margaret Balow, Cheryl Brandeland-Bentley, Hilary Bricely, Dr. Jeremy Gibson, and Teresa Liffrig,<br><br>*Plaintiffs*,<br><br>*vs*<br><br>Olmsted Medical Center, a Minnesota non-profit corporation,<br><br>*Defendants*. | Court File No. 22-CV-1668<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Margaret Balow ("Plaintiff Balow"), Cheryl Brandeland-Bentley ("Plaintiff Brandeland-Bentley"), Hilary Bricely ("Plaintiff Bricely"), Dr. Jeremy Gibson ("Plaintiff Gibson"), and Teresa Liffrig ("Plaintiff Liffrig"), (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendant Olmsted Medical Center ("Defendant Olmsted").

### INTRODUCTION

1.      In September 2021, Defendant Olmsted Medical Center ("Defendant Olmsted") mandated that all its employees, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendants' employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with their respective employer Defendants to be exempt from taking the Covid-19 vaccination.  Defendants denied the requested religious exemptions.  In

addition, Defendants failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendants terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine.

2.      Based on Defendants' implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

**JURISDICTION AND VENUE**

3.      Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.      This Court has personal jurisdiction over Defendant Olmsted as it is a non-profit corporation operating in and located in the State of Minnesota.

2

6.    Defendant Olmsted Medical Center is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7.    Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

## PARTIES

8.    Plaintiff Balow is an Olmsted County, Minnesota resident who worked for Defendant Olmsted as a registered nurse.  She worked for Defendant Olmsted for over five years.

9.    Plaintiff Brandeland-Bentley is a Dodge County, Minnesota resident who worked for Defendant Olmsted as an emergency department registered nurse.

10.    Plaintiff Bricely is a Winona County, Minnesota resident who worked for Defendant Olmsted Medical Center as a registered nurse. She worked for Defendant Olmsted for over 14 years.

11.    Plaintiff Gibson is a Minnesota resident and Doctor of Osteopathic Medicine who worked for Defendant Olmsted as a pathologist. Plaintiff Dr. Gibson worked for Defendant Olmsted for over 9 years.

12.    Plaintiff Liffrig is an Olmsted County, Minnesota resident who worked for Defendant Olmsted as a registered nurse. Plaintiff Liffrig worked for Defendant Olmsted for nearly 19 years.  Plaintiff is 54 years old.

3

13.     Defendant Olmsted Medical Center is a Minnesota Nonprofit Corporation which operates medical facilities in Minnesota.

**FACTS**

14.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

15.     Defendant recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.

16.     However, in September 2021, Defendant Olmsted implemented its Vaccine Mandate for all of its employees.  The Vaccine Mandate stated that "OMC requires all employees to submit proof of *competed vaccination*, *be vaccinated*, or submit a *declination form* by October 15, 2021."  A "declination form," meaning declining the vaccine, however, would "result in suspension without pay."

17.     Thus, to avoid "suspension without pay" or outright termination, all employees had to:

- "*Submit proof of completed vaccination*," i.e. prove the one, or two doses of vaccine;

- "*Be vaccinated*," i.e. to at least have started the two shot vaccination process by October 15, 2021 and "continue the process until they are fully vaccinated," or

- Submit a *declination form*, which led directly to suspension without pay.

4

18.     Defendant Olmsted employees could keep their job if they were "completely vaccinated," or were partially vaccinated as of October 15, 2021.

19.     Defendant Olmsted employees would lose their job, or be suspended without pay, if they failed to complete the already started vaccination process, or submit a Declination form affirmatively stating they were not going to be vaccinated.

20.     The employees' vaccination process was "monitored" until the employees were "fully vaccinated."  Failure to become "fully vaccinated" after the "monitoring process" would result in suspension without pay or termination.

21.     The Vaccine Mandate applied "to all employees … regardless of role and work location," meaning even workers working remotely were required to be vaccinated.

22.     In October 2021, Defendant Olmsted sent a communication to its employees outlining the steps to comply with the Covid-19 vaccination policy.  By November 2, 2021, employees who had not been vaccinated had to "complete and return a plan to Defendant Olmsted Human Resources Department stating how you will obtain full vaccination status against COVID-19".   The first dose had to be received by November 19 and full vaccination by December 17, 2021, or would be terminated.

23.     Defendant announced that there were both medical and religious "reasons" to "decline" the Vaccine, and did allow for employees to apply for a "*medical exemption" or a "religious exemptions*" to the Vaccine Mandate.

24.     However, what Defendant gave with one hand, it took away with the other by proclaiming that "*it is important to note that all major religious denominations support individuals receiving the COVID-19 vaccine.  In addition, major religious*

5

*denominations do not support using religious texts or passages as a reason to exclude*

*individuals from receiving the COVID-19 vaccine."* (emphasis added). In short,

Defendant flatly suggested that it would deny most or all requests for a religious

exemption.

25.     Defendant Olmsted created a "religious exemption review team comprised

of Human Resources and other staff" to "review declinations based on religious reasons."

26.     Defendants thus put themselves in the position of deciding the sincerity of

the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

27.     Defendant Olmsted created a "medical exemption team of OMC

physicians" to review "each declination form" for medical reasons.

28.     Defendants also expressed limitations to the "*medical exemption*" to the

Vaccine Mandate by stating: "*The known, absolute medical contraindications to COVID-*

*19 vaccination:*

- *Severe anaphylaxis or allergic reaction to a previous does of COVID-19 vaccine or its components; or*

- *Severe anaphylaxis or allergic reaction to polyethylene glycol (PEG) or polysorbate.*

29.     Known, *temporary* medical contraindications to COVID-19 vaccination

include:

- Having received COVID-19 monoclonal antibody treatment within the past 90 days;

- Currently recovering from a COVID-19 infection and required isolation;

- Currently recovering from a severe illness; or

6

- Currently pregnant or nursing.

Other medical conditions were preemptively discounted or disregarded.

30.     In the unlikely event a Defendant Olmsted employee would receive a religious or medical exemption, they still had to:

- 1) "complete mandatory educational modules regarding COVID-19 and the vaccine;" and

- 2) submit to "weekly testing at OMC's COVID-19 testing site."  The weekly testing was required "until they are fully vaccinated."

31.     Even if a religious or medical exemption was granted "OMC will continue to evaluate if the exemption remains valid."  Thus, an exemption granted today could be reversed tomorrow.

32.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Balow requested a religious exemption from Defendant Olmsted which Defendant Olmsted denied. Plaintiff Balow also submitted a request for an appeal from Defendant Olmsted of its denial of the request for a religious exemption.  Defendant Olmsted denied Plaintiff Balow's request for an appeal.

33.     Defendant Olmsted did not provide Plaintiff Balow with the criteria it used in evaluating her request for a religious exemption, or determination of undue hardship, nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiff Balow's request for a religious exemption.  Rather, using boilerplate language, Defendant Olmsted stated: "Your stated reason for refusing the vaccine does

not appear to meet the legal criteria associated with establishing a religious practice or belief that would prevent you from receiving it.  You therefore do not need a religious accommodation and/or are not entitled to an accommodation under the law."

34.    Defendant Olmsted required Plaintiff Balow to undergo weekly testing. Plaintiff Balow objected to the weekly testing because vaccinated employees were not required to test.  Defendant Olmsted terminated Plaintiff Balow after the deadline of November 19, 2021 for taking the vaccine.

35.    Plaintiff Balow is a Christian who believes in Scripture that she is made in the image and likeness of God, and her body is a Temple of the Holy Spirit and it is her obligation to care for her body.  It would violate her conscience to receive this vaccine.

36.    Plaintiff Balow contracted Covid-19 and recovered, providing her with natural immunity.

37.    Plaintiff Balow is aware of people who received the vaccine and then became ill shortly thereafter.  One friend's mother had a massive stroke shortly after receiving the vaccine.  Some of Plaintiff Balow's friends have had menstrual irregularities after receiving the vaccine.

38.    Plaintiff Balow received positive job performance reviews, including that "Maggie is doing a great job in the charge nurse role and as a preceptor."  She had received promotions and pay raises.

39.    Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Brandeland-Bentley requested a religious exemption from Defendant Olmsted which Defendant Olmsted

denied. Defendant Olmsted did not provide Plaintiff Brandeland-Bentley with the criteria it used in evaluating her request for a religious exemption nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiff Brandeland-Bentley request for a religious exemption.

40.     Prior to Defendant Olmsted's Vaccine Mandate, Plaintiff Brandeland-Bentley had received positive job performance reviews.  Plaintiff was denied her 2021 annual review because she was on vacation during a Covid testing period.  Because she was denied the annual review, she was also denied a pay raise which would have accompanied the review.

41.     Plaintiff Brandeland-Bentley is a Christian and believes it would violate her conscience and religious beliefs to receive the vaccine.

42.     Plaintiff Brandeland-Bentley was subjected to being called demeaning names by other Defendant Olmsted employees for not being vaccinated.

43.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Bricely requested a religious exemption from Defendant Olmsted which Defendant Olmsted denied. Defendant Olmsted did not provide Plaintiff Bricely with the criteria it used in evaluating her request for a religious exemption nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiff Bricely's request for a religious exemption.

44.     Plaintiff Bricely is a Christian who believes that it violates her religious beliefs to receive a vaccine produced with or tested with cells from aborted human

9

babies. She believes receiving the vaccine violates the Commandment, Thou Shall Not Kill. Further, she believes her body is a Temple of the Holy Spirit and it violates her beliefs to put substances into her body that can harm it, and are experimental.

45.     Plaintiff Bricely has had COVID-19 and recovered and therefore has natural immunity, and volunteered to take an antibody test to prove her immunity.

46.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Dr. Gibson requested a religious exemption from Defendant Olmsted which Defendant Olmsted denied. Plaintiff Dr. Gibson also submitted a request for reconsideration from Defendant Olmsted of its denial of the request for a religious exemption.  Defendant Olmsted denied Plaintiff Dr. Gibson's request for reconsideration.  Defendant Olmsted did not provide Plaintiff Dr. Gibson with the criteria it used in evaluating her request for a religious exemption nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiff Dr. Gibson's request for a religious exemption.

47.     Plaintiff Dr. Gibson is a Christian and follower of our Lord and Savior Jesus Christ.  It would violate his religious beliefs to use anything associated with aborted human baby cell lines, including the COVID-19 vaccines available to Defendant Olmsted employees.

48.     Plaintiff Dr. Gibson is aware of personal acquaintances becoming ill shortly after receiving the vaccine.  Fellow physicians have noted vaccinated people developing an auto immune disease called sarcoidosis.

49.     Consistent with Defendants' instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Liffrig requested a religious exemption from Defendant Olmsted which Defendant Olmsted denied.  Plaintiff Liffrig also appealed the denial and Defendant Olmsted also denied the appeal.

50.     Defendant Olmsted did not provide Plaintiff Liffrig with the criteria it used in evaluating her request for a religious exemption nor did Defendant Olmsted provide specific information regarding the reasons for the denial of Plaintiff Liffrig's request for a religious exemption.  In fact, Defendant Olmsted's human resources representative told Plaintiff Liffrig that Defendant Olmsted was going to deny all religious exemptions. Further, Defendant did not even contact Plaintiff's priest, who Plaintiff indicated that Defendant could call to confirm the sincerity of Plaintiff Liffrig's religious beliefs.

51.     Plaintiff Liffrig is a Roman Catholic, and believes that she would be cooperating with evil if she receives any of the COVID-19 vaccines, because they are produced with or tested with cells from aborted baby humans. Through prayer and with the guidance of the Holy Spirit, God has revealed it would be contrary to her conscience, and in violation of the Commandment Thou Shall Not Kill, to receive the vaccine.

52.     Plaintiff Liffrig tested positive for Covid-19 and recovered, providing her with natural immunity. She took an antibody test in February 2022 revealing she had "very high" levels of antibodies and high levels of immunity to SARS-COV-2.

53.     Plaintiff Liffrig is 54 years of age, and had worked for Defendant Olmsted for nearly 19 years.  She was near the top of the pay scale for her position and upon information and belief was terminated because of her age and/or her religion.

54.     Plaintiff Liffrig is also aware of people, including a family member, who has been harmed by receiving the vaccines.

55.     Rather than being an interactive process, Defendant Olmsted summarily denied the requests for religious exemptions with boilerplate language that: "*Your request for an exemption has been denied as you did not clearly state a religious reason for this exemption on your initial declination from and/or in response to request for additional information.*"

56.     Defendant Olmsted terminated Plaintiff Balow on or about November 19, 2021 because she refused to receive the C0vid-19 vaccine.  Plaintiff Balow filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Balow a Right to Sue letter dated March 28, 2022.

57.     Defendant Olmsted terminated Plaintiff Brandeland-Bentley on November 19, 2021.  Plaintiff Brandeland-Bentley filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Brandeland-Bentley a Right to Sue letter dated April 4, 2022.

58.     Defendant Olmsted terminated Plaintiff Bricely on or about November 12, 2021.  Plaintiff Bricely filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Bricely a Right to Sue letter dated March 28, 2022.

59.     Defendant Olmsted terminated Plaintiff Dr. Gibson on or about November 2021.  Plaintiff Dr. Gibson filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Dr. Gibson a Right to Sue letter dated April 5, 2022.

60.     Defendant Olmsted terminated Plaintiff Liffrig on January 18, 2022. Plaintiff Liffrig filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Liffrig a Right to Sue letter dated April 1, 2022.

61.     As a result of Defendants' policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendants terminated as a result.

62.     Defendant conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendant's processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendant wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation.

63.     Defendants did not provide information to its employees, including each of the Plaintiffs, about how Defendants determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

13

64.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendants made no effort to accommodate their requests for a religious exemption. Further, Defendants never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

65.     Defendant, in issuing the Vaccine Mandate, instructed that all of its employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

66.     Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

67.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

68.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

69.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant has done as set forth above.

## FIRST CAUSE OF ACTION

**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

70.     Plaintiffs restate and reallege paragraphs 1 through 69 as if fully set-forth herein.

71.     Defendant Olmsted is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

72.     Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

73.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

74.     Each Plaintiff informed his or her employer Defendant of the conflict between their religious beliefs and complying with the Vaccine Mandate.

75.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

76.     The Act prohibits Defendant from scrutinizing what the Defendant believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

77.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

78.     In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendant and its exemption review team applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

79.     Despite the Plaintiffs' consistent requests for Defendant to engage in an interactive process regarding their requests for accommodation, Defendant refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests

for an exemption for identical reasons as other of the Defendant's employees using an identical form letter.

80.     As set forth above, Defendant could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them continue to do their job the same as they had done for the last one and one-half years of their employment.

81.     Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

82.     Because of Defendant's unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA 363A.08

### All Plaintiffs

83.     Plaintiffs restate and reallege paragraphs 1 through 82 as if fully set-forth herein.

84.     Minn. Stat. Sec. 363A.01, et seq. prohibits discrimination in employment based on religion.

85.     Defendant is an "employer" within the meaning of Minn. Stat. 363A.01.

86.     Plaintiffs are "employees" within the meaning of Minn. Stat. 363A.01.

87.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

88.     Plaintiffs informed their Defendant employer of the conflict between their religious beliefs and the Vaccine Mandate.

89.     Minn. Stat. 363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

90.     Minn. Stat. 363A.01 et seq. prohibits Defendant from scrutinizing what it believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiff's exercise of their beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

91.     In response to the Plaintiff's requests for reasonable accommodation of their sincerely-held religious beliefs, Defendant's exemption review team applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation.

92.     Despite Plaintiffs' requests Defendant employer to engage in dialogue regarding their respective requests for a religious exemption, the Defendant refused throughout to engage in the interactive process, and instead Defendant terminated each of these Plaintiffs for generalized reasons, using identical form letters.

93.     Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

94.     Because of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

95.     Plaintiffs restate and reallege paragraphs 1 through 94 as if fully set-forth herein.

96.     Defendant Olmsted is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

97.     Each of the Plaintiffs was an "employee" of the Defendant employer within the meaning of 42 U.S.C. § 12111(4).

98.     The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

99.     Defendant's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a).

100.    As a result of Defendant's actions in violation of the ADA, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

**FOURTH CAUSE OF ACTION**

**Wrongful Discharge - Minnesota Refusal of Treatment Statute**

101.    Plaintiffs restate and reallege paragraphs 1 through 100 as if fully set-forth

herein.

102.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical

treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further

requires that those health care professionals administering vaccination notify the

individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of

Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …". *Minn. Stat. § 12.39, Subd. 1* (emphasis added).

> Further, "*before performing* … *vaccination of an individual* … a *health care provider* shall *notify the individual* of the *right to refuse* the … *vaccination,* …."  *Minn. Stat. § 12.39, Subd. 2 (*emphasis added*).*

103.    Plaintiffs are "individuals" who have a "fundamental right" to "refuse

medical treatment" and "vaccinations."

104.    Defendant is a "health care provider" (*Minn. Stat. § 12.39, Subd. 2*), who is

obligated to "notify the individual of the right to refuse vaccinations."  Further, the

underlying policy applies to "private agencies of every type" (*Minn. Stat. § 12.02, Subd.

2*), and Defendant Olmsted is a "private agency."

105.    The State of Minnesota is no longer under a state-declared "emergency," as

Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

106.    Plaintiffs have objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiffs' refusal to accede to Defendant's Vaccine Mandate, Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

107.    Defendant's actions in punishing the Plaintiffs for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge.

108.    As a result of Defendant's illegal actions taken against Plaintiffs. Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendant for an Order of the Court as follows:

1.    Adjudging that Defendant is liable to each of their respective employee Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and

suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.      Enjoining Defendant from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering Defendant to take action to restore each of their respective employee Plaintiffs to their positions they would have enjoyed absent Defendant's illegal conduct;

3.      Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable.

Dated: June 27, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiffs*